GEORGE W. MINKLER, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, EX REL. PERCY SMITHERS, DEFENDANT IN ERROR.

Officers: COUNTY SURVEYOR: MAL-ADMINISTRATION. Repeated acts of removal of government section corner-stones by a county surveyor, under a claim of right so to do for the purpose of rectifying the original government survey, amount to willful mal-administration in office within the meaning of sec. 1, article II., chap 18, Compiled Statutes.

ERROR to the district court for Gage county. Tried below before WEAVER, J.

*Brown & Ryan Brothers* and *Bush & Rickards*, for plaintiff in error, cited: *State v. Preston*, 34 Wis., 675. *United States v. Railroad Cars*, 1 Abb., 196. *Kendall v. Stokes*, 3 Howard (U. S.), 87. *Ramsey v. Riley*, 13 Ohio, 157. *Stewart v. Southard*, 17 Ohio, 402.

*Pemberton & Forbes* and *A. H. Babcock*, for defendant in error, cited: *Heaton v. Hodges*, 30 Am. Dec., 737. *Diehl v. Zanger*, 39 Mich., 604. 2 Whart. Crim. Law, sec. 1245. *Wallace v. New York*, 18 How. Pr., 169.

COBB, J.

A complaint was made to the board of county commissioners against the plaintiff in error for willful mal-administration in his office of county surveyor. He was tried and found guilty of this charge, and removed from office. The cause was removed to the district court on error, when the finding and judgment of the board of county commissioners were affirmed, and is now before this court on error to the district court. The only substantial error assigned is, that the action of the board of county commissioners is not sustained by the evidence in the case.

Section 1 of article 2 of chapter 18, Compiled Statutes, provides that: "All county officers, including justices of the peace, may be charged, tried, and removed from office for official misdemeanors, in the manner and for the causes following: *First.* For habitual or willful neglect of duty. *Second.* For gross partiality. *Third.* For oppression. *Fourth.* For extortion. *Fifth.* For corruption. *Sixth.* For willful mal-administration in office. *Seventh.* For conviction of a felony. *Eighth.* For habitual drunkenness."

The charge in this case was made under the sixth clause of the above section, and the mal-administration in office charged was that of having, "in his capacity of county surveyor, and while acting as such," taken up, "removed, and carried away all the government land marks and the stones set up to mark the section, half-section, and quarter-section corners," of certain sections of land therein described, in his county.

There is no material conflict in the testimony. Nearly or quite all of the witnesses, including the plaintiff in error himself, who was sworn as a witness on his own behalf, testified in substance that he had removed the government section and quarter-section corner-stones, knowing them to be such, of the sections described in the complaint; and that he did it under pretense of rectifying the government survey. It is admitted by counsel that this was done without authority, but they contend that as it was done "under claim of power to do so," that it was not willful mal-administration in office. Counsel also claim that the power on the part of the county surveyor to remove the government corner-stones was fortified by the written opinion of respectable attorneys, and that "on each occasion the change was made to place the corners where such corners should be under the plât and field notes." But neither such written opinion of attorneys, nor the plat or field notes of the government survey, were offered in evidence, according to the bill of exceptions. Counsel draw a distinction between

the legal meaning of the prefixes *mal* and *mis*, and in effect claims, that while the county surveyor was guilty of *mis*-administration, he was not guilty of *mal*-administration. But whatever there may be in the original meaning of the two words, we find them used in the law books almost or quite interchangeably, indicating a regard for euphony of sound rather than a distinction in meaning.

Thus, in Bouvier's Law Dictionary, under the word mal-practice, in Latin *mala-praxis*, we find the several definitions of *willful mal-practice, negligent mal-practice,* and *ignorant mal-practice.* Certainly, the prefix *mal* is not used in the two last cases to signify intentional wrong.

In the case of *Coite v. Lynes*, 33 Conn., 109, the court use the following language: "For a misfeasance strictly is a default in not doing a lawful act, in a proper manner, omitting to do it as it should be done—while a malfeasance is the doing of an act wholly wrongful and unlawful, and non-feasance is an omission to perform a required duty at all, or total neglect of duty."

The phrase mal-administration is not found in any of the law dictionaries, but we cannot be far wrong in giving it the signification of wrong administration, and we believe that to be the sense in which the legislature used it in framing the section under consideration. Certainly, the prefix *mal* could not have been therein used in the sense of corruption or oppression, as these are both expressly provided for by other clauses of the same section.

The word *willful* or *willfully* is variously construed. Abbott, in his law dictionary, says that it is a term used in averring or describing an act, particularly one charged as a crime, to show that it was done with free activity of the perpetrator's will. The author also quotes from the opinion in the case of *United States v. Three Railroad Cars*, 1 Abb. U. S., 196, a case cited by plaintiff in error, as follows: "To antagonize a conviction under a penal statute prescribing a punishment for willfully removing an official

seal from property, which has been sealed up by officers of the customs, it must appear that the defendant not only intended to "remove the seal, but that he had at the time a knowledge of its character.    One who removes such a seal in ignorance of its character, and in the honest execution of a supposed duty in the care and transportation of the property, is not liable to punishment under the statute, for the reason that he cannot be deemed to have acted willfully."

Test the conduct of the plaintiff in error by the rule laid down in the above case, and it appears to us that he acted willfully.    It is admitted, as it must be, that the removal of established monuments and land marks was unlawful and forbidden even from the time of Moses, the great-law giver, and it is nowhere claimed or suggested that the plaintiff in error was ignorant, or without knowledge of the character of the government corner stones.    But on the contrary, it is claimed that he not only knew the true character of the corner stones, but had a better knowledge of where they ought to have been set than the original government surveyors had.

Plaintiff in error also cites *State v. Preston*, 34 Wis., 675.    That was an action against Preston for willfully obstructing a highway.    C. J. Dixon, in the opinion of the court, says :  "The principal question to be considered in the case is as to the meaning and effect of the word " willfully " above used, and arises upon an offer of proof made by the defendant on the trial which was rejected by the court.    Having shown by the witness, one of the supervisors, that an application was made to the supervisors to take up the road in question, the defendant then offered to prove by him that the supervisors of the town of Koshkonong in the year 1871, and prior to the alleged act of the defendant in obstructing this road, upon proper application made to them to take up and discontinue the same upon due notice given, met to decide such application, viewed the premises in question, and determined that there was no highway

there, and so informed the defendant, and instructed him to place the fence where he did. The offer was objected to by the plaintiff, and rejected by the court, and exception was taken by the defendant." This offer the majority of the court held should have been accepted, and if made good would have been a defense. While we are not disposed to question the authority of this case, although by a divided court, we do not deem it applicable to the case at bar. What is this case in plain terms? Simply that Preston did not incur the penalty for obstructing the highway; because the town board, which had full control of all highways in the town, had publicly and officially informed him that it was not a highway, and assented to his doing the act for the doing of which it was now sought to subject him to a penalty. Let us suppose that this offer had been to prove that he had been advised by even the highest authority that he had a right to obstruct any and all highways, then that case would have been in point to the case at bar, but it is quite possible that the supreme court of Wisconsin would not have sustained such offer.

This court cannot take judicial notice of the fact which seems to be assumed by counsel, that the government survey of the Otoe reservation was done in an incorrect and faulty manner, although some members of the court, as individuals, may believe such to be the case. But if this be true, it is no part of the duty, nor is it permissible for the county surveyor to undertake to rectify such surveys.

C. J. Cooley, in *Diehl v. Zanger*, 39 Mich., 601, a case cited by counsel for defendant in error, says: " Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey, without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischiefs that must follow would be

simply incalculable, and the visitations of the surveyor might well be set down as a great public calamity. But no law can sanction this course.  *  *  *  The question is not how an entirely accurate survey would locate these lots, but how the original stakes located them. No rule in real estate law is more inflexible than that monuments control course and distance—a rule that we have frequent occasion to apply in the case of public surveys, when its propriety, justice, and necessity are never questioned."

We see no error in the judgment of the district court sustaining the action of the board of county commissioners, and it is affirmed.

JUDGMENT AFFIRMED.